No. 25-4692

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

PROTECT THE PENINSULA'S FUTURE, et al.,
*Plaintiffs/Appellees*,

v.

DOUG BURGUM, Secretary of the Interior, et al.,
*Defendants/Appellees*,

&

JAMESTOWN S'KLALLAM TRIBE,
*Intervenor/Defendant/Appellant*.

---

Interlocutory Appeal from the United States District Court for the Western District
of Washington No. 3:23-cv-05737 (Hon. Benjamin H. Settle)

---

**SUPPLEMENTAL EXCERPTS OF RECORD**

---

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ALLEN M. BRABENDER
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3281
allen.brabender@usdoj.gov

SER 1

## INDEX TO THE SUPPLEMENTAL EXCERPTS OF RECORD

| Description | Docket# | SER# |
|---|---|---|
| USFWS Information Memorandum (May 20, 2022) | 15, Exh.D | 3 |
| Letter to Jennifer Brown-Scott and Hugh Morrison from Zachary Griefen (Mar. 16, 2023) | 15, Exh.I | 8 |
| Letter from Hugh Morrison to Zachary Griefen (Undated) | 15, Exh.J | 11 |
| Federal Defendants' Corrected Response to Jamestown S'Klallam Tribe's Motion to Dismiss under Fed. R. Civ. P. 12(b)(7) (Dec. 23, 2024) | 56 | 13 |

# EXHIBIT D



# USFWS INFORMATION MEMORANDUM



**DATE:**          May 20, 2022

**TO:**            Martha Williams, Director, U.S. Fish and Wildlife Service

**FROM:**          Hugh Morrison, Acting Regional Director, Pacific Region 1

**SUBJECT:**       BP036550: Commercial Oyster Farming Proposal by the Jamestown S'Klallam
                   Tribe within the Boundary of Dungeness National Wildlife Refuge

## I.     STATEMENT OF ISSUE/KEY FACTS

Since 2015, the Jamestown S'Klallam Tribe (Tribe) has been working to establish commercial oyster farming within the Dungeness National Wildlife Refuge (Refuge).  The desired area (50 acres of tidelands) for this commercial operation is closed from October 1 to May 14 for use by tens of thousands of migrating and wintering waterfowl of local, regional, and international importance.  The key issue with the Tribe's proposal is access to the site during the closed period.  Service policy and the provisions of the National Wildlife Refuge Improvement Act require a Refuge Manager determination of whether proposed uses are compatible with the purposes of the Refuge (i.e., Compatibility Determination).  Based on the Tribe's current proposal, the Refuge Manager has completed a draft finding that access for the commercial operation is not a Compatible use.

## II.    BACKGROUND AND FWS POSITION

Since 2015, the Service has been working with the Tribe to adapt the proposed operations to minimize wildlife impacts (e.g., different times of the year, different methods that require less intensive management, different locations, etc.).  Other Service programs have also been involved as part of the permit process required by other agencies (i.e., Ecological Services conducted Section 7 consultation and Migratory Birds helped develop a monitoring plan with the Refuge).  The Tribe has secured a permit from the U.S. Army Corps of Engineers (ACOE) and a lease from the Washington Department of Natural Resources (WDNR) for use of the 50 acres, which includes access during the closed period.  The State owns the land for the identified area; however, the Service has an easement with the State which provides jurisdiction to the Service for determining compatibility of uses of the property.

Upon Solicitor advice, the Refuge completed a draft Compatibility Determination for access to the oyster lease and found access incompatible with Refuge purposes.  In February 2022, a working group consisting of Solicitor, NWRS Headquarters, and Regional Refuge program representatives was convened to draft an Options Memorandum analyzing the validity of a range of approval approaches, including any new mechanisms potentially created by joint Secretarial Order 3403.  Additionally, the Regional Office of the Solicitor analyzed the shellfish Settlement Agreement in U.S. v. Washington (2007) and it does not appear the Tribe has a treaty right for shell fishing in the lease area. This was conveyed to the Tribe's attorney in 2021.  Based on the

Options Memorandum and prior Solicitor advice, it was concluded that the Service cannot allow the proposed activity unless the entirety of the commercial oyster farming operation within the Refuge boundary is found Compatible with Refuge purposes.  While engaging with the Tribe, the Refuge has consistently communicated the proposed use would likely be found incompatible and offered multiple opportunities for continued dialogue to find a path forward together.

## III.     POSITION OF AFFECTED PARTIES/PUBLIC LANDS AFFECTED

Jamestown S'Klallam Tribe has been involved in the permitting process for this commercial operation since 2015.  The Tribe believes they have a treaty right for the proposed cultivation and harvest of shellfish, that no compatibility determination is necessary, and that wildlife impacts associated with access to their lease and operations will be limited.  Prior to 2015, the Tribe was permitted for cultivation activities that were found compatible on the Refuge.  The Service formerly found these activities compatible given access was restricted to times that would minimize wildlife impacts, the techniques used were less intensive, and the area of use was on a smaller footprint.  The current proposal for cultivation activities would shift the Tribe's operation to one that would be year-round, more intensively managed, and would impact a larger area of the Refuge.  The Tribe submitted a draft Letter of Agreement to the Service in February 2022 outlining acknowledgement by both parties of treaty rights, obligations, and commitments to authorize the commercial oyster farming operation.  Chairman Ron Allen has also contacted the DOI Deputy Solicitors office.

The Tribe has received authorization (permit/lease) from the ACOE, Clallam County, WA Department of Ecology (WADOE), and WDNR for the commercial oyster farming operation.

Clallam and Jefferson County residents and multiple non-governmental organizations (NGO) provided comment to the ACOE, Clallam County, and WADOE permit processes.  Most comments were in opposition to the commercial oyster farm.  Many residents stated concern over the proposed location in a National Wildlife Refuge and importance of the area for migrating and wintering birds.

In October 2021, a local NGO organized a five-hour protest at the Refuge entrance that received media attention and featured a speaker formerly with the Smithsonian Institute.  Participants were encouraged to email the Region to express opposition to authorizing the use on the Refuge.

The ACOE has fulfilled a FOIA request from an environmental organization for their administrative file.  The Service is also responding to a FOIA request received in November 2021 from the Tribe to provide copies of all email, records, and correspondence related to the Tribe's Dungeness oyster farm proposal dating back to January 1, 2015.

## IV.     POTENTIAL ISSUES

Environmental non-profit organizations have indicated they will seek a legal remedy if the Tribe is permitted to conduct commercial oyster farming operations within the boundary of Dungeness NWR.

It is uncertain if the Bureau of Indian Affairs (BIA) has determined a position on this issue.  A formal briefing to the Assistant Secretary for BIA may be warranted.

Version 2020.1

## V.     NEXT STEPS

The Acting Regional Director, Acting Regional Refuge Chief, and Refuge Manager will meet with the Tribe in person to convey efforts to consider options and to share the conclusion that a Compatibility Determination in necessary.  This meeting is another opportunity to identify ways in which the Service and the Tribe can find a path forward together.  We will ask the Tribe if they see any other options, including the potential modification of their proposed oystering operations.

Attachment(s)

**Prepared by:** Hugh Morrison, Acting Regional Director, Pacific Region 1

☒ **FYI**   **or**   ☐ **Requested by:** N/A

☒ **Prepared for a meeting:** Meeting Request will be submitted

**Does this involve, directly or tangentially, any Director's Office recusals? ☐ Yes  ☒ No**
**If yes, please identify:**

Version 2020.1

**Attachment:**

Talking points for meeting with the Tribe:

- The Service takes our commitment to co-stewardship with the Tribe very seriously.

- The Service had a team review the range of options using the SO 3403 to determine possible approval of the request for access for the commercial oyster farming operation.

- We understand the Tribe asserts there is a treaty right that would preclude the need for a permit or a finding of compatibility, but it appears that there is no treaty right associated within the leased area based on legal settlements regarding shellfish rights.

- We are very interested in hearing if the Tribe sees options that the Service may have missed in our analysis.

- We much appreciate the Letter of Agreement (LOA) proposed by the Tribe. Though we cannot sign the LOA, as it is inconsistent with the National Wildlife Refuge Improvement Act and affirms treaty rights that do not appear to exist in the leased area, we welcome the intent of the LOA, which stresses how we can work together to support both the Tribe's interest and Refuge purpose to conserve and manage these cultural and natural resources together.

- The Refuge Manager, within their authority, has drafted a finding based on all currently available scientific information and what the Service understands about the Tribe's proposed access from the Permits issued to the Tribe.  The Service isn't certain if the information obtained from these Permits about the Tribe's proposed use is accurate. Upon evaluation of all currently available information, access for the commercial oyster farming operation is not a compatible use of the Refuge.  If the Service has used incorrect information about the Tribes proposed access, we welcome review for clarification and/or adjustment as needed to the proposal.

- We are specifically interested in any adjustments to their request about proposed times of the year, different methods that require less intensive management, and different locations for the use to occur on the Refuge.

- We share the Tribe's interest in moving forward. We welcome additional thoughts from the Tribe on options we may missed.  If there is agreement that a Compatibility Determination is necessary, we would like to outline all the steps required to make a final decision to approve a commercial use on a National Wildlife Refuge.  A request for an access permit is only the first step.

Version 2020.1

# EXHIBIT I

**BRICKLIN & NEWMAN** LLP

lawyers working for the environment

Reply to:  Seattle Office

March 16, 2023

Jennifer Brown-Scott                **VIA U.S. MAIL AND E-MAIL TO** jennifer_brownScott@fws.gov
Project Leader
USFWS
Washington Maritime National Wildlife Refuge
715 Holgerson Road
Sequim, WA 98382

Hugh Morrison                        **VIA U.S. MAIL AND E-MAIL TO** hugh_morrison@fws.gov
Regional Director
USFWS, Pacific Region
911 NE 11th Avenue
Portland, OR 97232-4181

> Re:   Jamestown S'Klallam Tribe' Proposed Commercial Oyster Farming Operation
> within the Dungeness National Wildlife Refuge
> (Reference Nos. FWS/R1/NWRS/FF01RWMT00; FWS/R1/NWRS)

Dear Ms. Brown-Scott and Mr. Morrison:

Our firm has reviewed documents related to the Jamestown S'Klallam Tribe's application for a commercial non-native oyster industrial operation within the Dungeness National Wildlife Refuge ("Project"). Based on our review, it appears that the United States Fish and Wildlife Service (USFWS) has not completed a compatibility determination or issued a special use permit for this Project.

A compatibility determination is required for this Project under 603 FW 2.3; 50 C.F.R. § 25.21; and 16 U.S.C. § 668dd(d)(3)(A)(i). A special use permit is also required under 50 C.F.R. § 25.44(b). Refuge Improvement Act regulations prohibit members of the public on any refuge from "conducting a commercial enterprise . . . except as may be authorized by special permit." 50 C.F.R. § 27.97.

As part of our due diligence before filing a failure to act claim under the Administrative Procedures Act, we are writing to confirm that no compatibility determination or special use permit has been issued by USFWS for the Project. Is that correct?

---

123 NW 36th Street, Suite 205, Seattle, WA  98107   ●   25 West Main, Spokane, WA 99201
(206) 264-8600   ●   (877) 264-7220   ●   www.bricklinnewman.com

SER 9

Jennifer Brown-Scott
Robyn Thorson
March 16, 2023
Page 2

If USFWS is preparing to issue a compatibility determination and/or special use permit for the Project in the near future, please let us know. We assume that if USFWS intends to issue a compatibility determination and special use permit for the Project, then you would agree with us that the Project cannot be implemented until that determination and special permit have been issued.  Please confirm that our assumption is correct.

If we do not receive a response to these questions by March 31, 2023, we will assume that USFWS has not issued a compatibility determination and/or special use permit for the Project and proceed accordingly.

Thank you.

Very truly yours,

BRICKLIN & NEWMAN, LLP

Zachary K. Griefen

SER 10

# EXHIBIT J





# United States Department of the Interior

**FISH AND WILDLIFE SERVICE**
911 NE 11th Avenue
Portland, Oregon  97232-4181

In Reply Refer to:
FWS/R1/NWRS

Zachary K. Griefen
Bricklin & Newman, LLP
123 NW 36th Street, Suite 205
Seattle, Washington 98107

Dear Mr. Griefen:

Thank you for your inquiry dated March 16, 2023.  The U.S. Fish and Wildlife Service has not completed a compatibility determination or issued a special use permit for the Jamestown S'Klallam Tribe's proposal to resume aquaculture operations on the area it has leased from the State of Washington.

The Dungeness National Wildlife Refuge holds an easement over the tidelands area where the State-issued lease is located; the State of Washington retains the remaining property interests. Jamestown S'Klallam Tribe has a long history of shellfishing and reserved treaty rights in Dungeness Bay.  Development of a compatibility determination is not appropriate in this instance where these pre-existing property rights exist.

As a result, no further approvals are needed from the U.S. Fish and Wildlife Service for the Jamestown S'Klallam Tribe to resume aquaculture operation on the State-leased portion of Dungeness National Wildlife Refuge.  There are existing permits and leases with county, state, and federal approvals that govern the project.

Sincerely,

Regional Director
U.S. Fish and Wildlife Service
Pacific Region 1

## PACIFIC REGION 1

IDAHO, OREGON*, WASHINGTON,
AMERICAN SAMOA, GUAM, HAWAII, NORTHERN MARIANA ISLANDS

SER 12

The Honorable Benjamin H. Settle

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PROTECT THE PENINSULA'S FUTURE; COALITION TO PROTECT PUGET SOUND HABITAT; and BEYOND PESTICIDES, <br><br> Plaintiffs, <br><br> v. <br><br> DEB HAALAND, SECRETARY OF THE INTERIOR; UNITED STATES FISH AND WILDLIFE SERVICE; MARTHA WILLIAMS, DIRECTOR OF UNITED STATES FISH AND WILDLIFE SERVICE; HUGH MORRISON, REGIONAL DIRECTOR OF THE PACIFIC REGION; and JENNIFER BROWN SCOTT, PROJECT LEADER, WASHINGTON MARITIME NATIONAL WILDLIFE REFUGE COMPLEX, <br><br> Defendants. | Case No. 3:23-cv-05737-BHS <br><br> **FEDERAL DEFENDANTS' CORRECTED RESPONSE TO JAMESTOWN S'KLALLAM TRIBE'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(7)** <br><br> Noted on Motion Calendar: December 16, 2024 |

SER 13

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 2

    A.    1943 Deed Conveying an Easement to the Service ....................................... 2

    B.    1990 Lease to the Tribe.................................................................................. 3

    C.    2007 Lease to the Tribe.................................................................................. 4

    D.    2021 Lease to the Tribe.................................................................................. 4

DISCUSSION ..................................................................................................................... 4

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*,
     932 F.3d 843 (9th Cir. 2019) ................................................................ 1

*Firth v. Lu*,
     49 P.3d 117 (Wash. 2002) (en banc) ................................................... 5

*Nat'l Licorice Co. v. NLRB*,
     309 U.S. 350 (1940) ............................................................................ 1

*Sofie v. Kane*,
     650 P.2d 1124 (Wash. Ct. App. 1982) ................................................ 5

*United States v. Park*,
     536 F.3d 1058 (9th Cir. 2008) ............................................................ 5

*Zonnebloem, LLC v. Blue Bay Holdings, LLC*,
     401 P.3d 468 (Wash. Ct. App. 2017) .................................................. 5

Federal Defendants hereby respond to limited-Intervenor Jamestown S'Klallam Tribe's ("Tribe") Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(7), ECF No. 44 ("Mot.").

## INTRODUCTION

The Tribe moves to dismiss Plaintiffs' Amended Complaint, ECF No. 22 ("Am. Compl."), filed against Federal Defendants, which alleges that the U.S. Fish and Wildlife Service ("Service") violated the Refuge Improvement Act with respect to its administration of the Dungeness National Wildlife Refuge ("Refuge").  The Tribe contends that it is a required party that must be joined because disposition of this action might impair or impede the Tribe's property rights—a lease granted by the State of Washington in 2021 (the "2021 Lease")—and the Tribe's asserted Treaty rights but cannot be joined due to its sovereign immunity.

The principal claim before the Court is brought under Section 706(1) of the Administrative Procedure Act ("APA") and concerns the Service's alleged failure to perform a compatibility determination pursuant to the Refuge Act respecting the Tribe's oyster farming on tidelands in the Refuge.  No final decision respecting compatibility of the Tribe's oyster farming with refuge purposes has issued.  Plaintiff does not ask this Court to review, set aside, or vacate a final decision favorable to the Tribe.  The Tribe therefore focuses on the presumed impacts of any future final compatibility determination.

Under Ninth Circuit precedent, a challenge to federal action under the APA may be dismissed for failure to join a nonparty tribe where the impact of a successful challenge would impair a right granted to the absent tribe.  *See Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 852 (9th Cir. 2019).[1]  In the limited context of the

_____

[1] Although binding on this Court, the Federal Defendants note their disagreement with the *Dine Citizens* holding:  judicial review challenging a federal agency action that concerns public rights should generally proceed even where it is not feasible to join a third party, such as a tribe, who benefits from the agency action. *See National Licorice Co.* v. *NLRB*, 309 U.S. 350, 366 (1940) (finding litigation "restraining the unlawful actions of the defendant" may proceed without joining as parties those with whom the defendant has contracted—"even though the restraint prevented [the defendant's] performance of the contracts"—because an independent "public right was vindicated by restraining the unlawful actions.")

Tribe's Rule 19 motion, Federal Defendants take no position on whether the Tribe has met the standard for indispensable party status. However, Federal Defendants reserve all arguments regarding the priority of any property rights conveyed to the Tribe by the 2021 Lease. While Federal Defendants take no position on the Tribe's right as an indispensable party, to assist the Court, we provide background that may be relevant to the Court's adjudication of the limited-Intervenor's motion.

## FACTUAL BACKGROUND

The Refuge was established in 1915 as a refuge for birds. It is located near Sequim, Washington, on the north end of the Olympic Peninsula. The Refuge includes portions of tidelands in the Dungeness Bay, to which the State of Washington conveyed an easement to the Service in 1943. Jamestown S'Klallam Tribe is a federally recognized Indian Tribe who currently conducts oyster farming in the area of the Service's easement in Dungeness Bay, under a lease of around 50 acres of tidelands from the Washington State Department of Natural Resources ("DNR" or the "State").

### A.    1943 Deed Conveying an Easement to the Service

In 1943, the State executed a Deed conveying an easement to tidelands in Dungeness Bay to the Service. Admin. Record ("A.R.") at FWS-000006, ECF No. 26-2 at 6. The Deed provides, in part:

> IN CONSIDERATION of Section 152, Chapter 255, Laws of 1927, the STATE OF WASHINGTON does hereby grant, bargain, sell and convey unto United States of America Fish and Wild Life Service, its successors and assigns, the following described tide lands of the second class, as defined by Chapter 255 of the Session Laws of 1927, situate in Clallam County, Washington, to wit:
>
> All tide lands of the second class owned by the State of Washington, situate in front of adjacent to or abutting upon the following described uplands in township 31 north, range 4 west, W. M. . . . [List of parcels]. . .
>
> The above described tide lands are conveyed under the provisions of section 152 of Chapter 255 of the Session Laws of 1927. . . .
>
> TO HAVE AND TO HOLD the said premises, with their appurtenances, unto the

said United States of America Fish and Wild Life Service, its successors and assigns, forever.

*Id.* The subject tidelands included those adjacent to or abutting:

- "Lots 1, 2, and 3, section 23, with a frontage of 179.28 lineal chains, more or less"; and

- "Lots 1, 2, 3, 4, and 5, section 24, with a frontage of 258.35 lineal chains, more or less."

*Id.* Section 152 in Chapter 255 of the Laws of 1927 of the State of Washington, which is referenced in the Deed as consideration, provides:

> SEC. 152. [Grant of easement to the U.S. in tide and shore lands.]  Whenever application is made to the commissioner of public lands, by any department of the United States government, for the use of any tide or shore lands belonging to the state, for any public purpose, and said commissioner shall be satisfied that the United States requires or may require the use of such tide or shore lands for such public purpose, said commissioner may reserve such tide or shore lands from public sale and grant the use of them to the United States, so long as it may require the use of them for such public purposes; and the commissioner of public lands shall certify such fact to the governor, who shall thereupon execute an easement to the United States, which shall be attested by the secretary of state, granting the use of such tide or shore lands to the United States, so long as it shall require the use of them for said public purpose.

### B.    1990 Lease to the Tribe

In 1990, the State executed a lease to the Tribe to some of the tidelands within the United States' easement in exchange for rent paid to the State.[2]  A.R. at FWS-000010–25, ECF No. 26-2 at 10–25.  Specifically, the 1990 Lease covered:

- Parcel I—"Tidelands of the second class owned by the state of Washington, situated in front of, adjacent to, or abutting upon the southeasterly side of Government Lots 1, 2, and 3, Section 23, . . . containing 53.5 acres more or less"; and

- Parcel II—"Tidelands of the second class, owned by the state of Washington, lying westerly of Government Lots 4 and 5, Section 24, . . . containing 16.6 acres more or less."

---

[2] The 1990 Lease provided that the Tribe would "cause all work on the Property and all business conducted thereon during the Term to be performed in accordance with all directions and regulations of all governmental agencies and the representatives of such agencies."  A.R. at FWS-000014 ¶ 4.6(a), ECF No. 26-2 at 14.

A.R. at FWS-000010, ECF No. 26-2 at 10.

### C.    2007 Lease to the Tribe

In 2005, the Tribe applied for a lease renewal, which was finalized in 2007, for a term renewable through July 2017. A.R. at FWS-000048–87, ECF No. 26-2 at 48–87; A.R. at FWS-000048, ECF No. 26-2 at 84.  The 2007 Lease permitted use of the subject tidelands "for Oyster and Geoduck Cultivation with Limited Commercial Harvest (the 'Permitted Use'), and for no other purpose," in accordance with the details set out in Exhibit B. A.R. at FWS-000055 ¶ 2.1, Ex. B, ECF No. 26-2 at 55, 84.[3]

### D.    2021 Lease to the Tribe

In 2021, the State and the Tribe entered into a re-lease of the tidelands on Government Lots 1, 2, and 3, Section 23, totaling 2,178,000 square feet, or 50 acres, through July 2031.  A.R. at FWS-000636–76, ECF No. 26-3 at 51–91.  The 2021 Lease, which is the current lease, permits use of the subject tidelands "for cultivation and harvesting of Pacific oysters (the 'Permitted Use'), and for no other purpose," and sets out the details in Exhibit B.  A.R. FWS-000638 ¶ 2.1, ECF No. 26-3 at 53.  Like the 2007 Lease, the 2021 Lease states that it is subject to all prior valid interests of third parties; does not include a right to natural resources except to the extent expressly permitted in Exhibit B; and is subject to compliance with government rules and regulations.  A.R. at FWS-000637, 639 at Background, ¶¶ 1.1, 2.3, 3.2.

### DISCUSSION

In its motion to dismiss, the Tribe asserts that the "Service's easement is subservient to the" property interest of the State of Washington and hence the Tribe's 2021 Lease.  The State of

---

[3] The 2007 Lease recognized that the rights under the lease were subordinate to previous interests conveyed by the State to other entities, which include the United States.

> (b) This Lease is subject to all valid interests of third parties noted in the records of Clallam County, or on file in the Office of the Commissioner of Public Lands, Olympia, Washington; rights of the public under the Public Trust Doctrine or federal navigation servitude; and treaty rights of Indian Tribes.

A.R. at FWS-000054 ¶ 1.1, ECF No. 26-2 at 54.

Washington could not in 2021 convey to the Tribe a use right superior to the easement granted to the Service in 1943 under Washington law.  *See United States v. Park*, 536 F.3d 1058, 1061 (9th Cir. 2008) (Federal courts "generally follow state law to resolve property disputes, such as [the] issue of interpretation of an easement.").   If the Court were to reach the merits, Federal Defendants' position would be that the Service's rights under the easement control the decision concerning refuge uses.

In 1943, the State of Washington granted the Service an easement to use the tidelands at issue for any "public purpose."  A wildlife refuge is a public purpose.  Thus, since 1943, under Washington law, the Service has held the dominant estate, and the State of Washington has held the servient estate.  *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 401 P.3d 468, 471 (Wash. Ct. App. 2017) (holding that the person benefiting from an easement holds the dominant interest in the land that is subject to the easement; the grantor of an easement retains a subordinate interest called the servient estate).  As such, the Service's easement for refuge use is the dominant estate under state law.

After 1943, even though the State possessed fee simple title, it retained no right to use the tidelands in a manner that would materially interfere with the Service's easement.  Not holding that right, the State could not thereafter convey such a right to a third party.  *See Firth v. Lu*, 49 P.3d 117, 120 (Wash. 2002) (en banc) (citing *Sofie v. Kane*, 650 P.2d 1124, 1128 (Wash. Ct. App. 1982).

Federal Defendants take no position regarding whether the Tribe's alleged treaty right or leasehold interest is sufficient to meet the standard under Rule 19 to be declared an indispensable party, but reserve the right to make arguments consistent with the Federal Defendants' property interests should the Court reach the merits.

DATED this 23rd day of December, 2024.

Respectfully submitted,

TODD KIM

Assistant Attorney General
S. JAY GOVINDAN, Section Chief
NICOLE M. SMITH, Assistant Section Chief
Environment & Natural Resources Division
Wildlife & Marine Resources Section

*/s/ Marissa Piropato*
MARISSA PIROPATO (MA BAR 65160)
DEPUTY CHIEF
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 305-0470
Marissa.Piropato@usdoj.gov


MAGGIE BAKER SMITH
Trial Attorney (WA Bar No. 45628)
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
7600 Sand Point Way, NE
Seattle, Washington 98155
(202) 598-3088
maggie.smith@usdoj.gov

FREDERICK H. TURNER
Senior Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044
(202) 305-0641
frederick.turner@usdoj.gov


TESSA M. GORMAN
Acting United States Attorney

BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street

SER 21

Seattle, Washington 98101-1271
Phone: (206) 553-7970
Fax: (206) 553-4073
E-mail: brian.kipnis@usdoj.gov

*Attorneys for Defendants*